# Citizens' National Bank v. Greene.

(Decided March 12, 1935.)

E. L. MORGAN and J. C. BAKER for appellant.

J. S. FORESTER and J. B. CARTER for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The Citizens' National Bank of Harlan has sued C. F. Wheeler, J. D. Wheeler, and J. S. Greene on two notes for $2,000 and $1,500, respectively. They were the last of renewals of notes originating about three years before. Default judgment was rendered against the Wheelers. Greene, an accommodation indorser, by answer alleged that before he executed either of the notes sued on, the cashier of the bank represented to him that it held collateral security to protect any and all indebtedness which C. F. Wheeler, the principal in the two notes, owed the bank, which consisted of 89 shares of stock of the Wheeler Dairy; that it would be ample to satisfy all of his indebtedness; that he (the defendant) executed the notes in reliance upon that representation and except for it would not have done so, but would have taken steps at that time to secure himself against loss by reason of his suretyship; that Wheeler was then solvent but became insolvent before the notes matured. The defendant further alleged that the bank did have such stock, and that without his knowledge or consent and against his will the bank afterward released the collateral and thereby increased his liability on the two notes; that at the time of the representations and of the release the stock was worth $8,900 and of sufficient value to pay a material part of all the indebtedness which Wheeler owed the bank; that by reason of the release of the collateral without apply-

ing its value to Wheeler's indebtedness, he (the defendant) was discharged from all liability. The case was submitted to the jury on the issues as to the representations having been made, the defendant's reliance thereon, and whether the bank did in fact have such collateral and release it without Greene's consent. The verdict was for the defendant, and the judgment was rendered accordingly.

There was contradictory evidence as to the representations having been made to Greene as to the bank holding the collateral, and also as to Wheeler's solvency at the time. Evidence as to other facts is undisputed. Some time before the renewal notes sued on were executed, Wheeler had made a note to the bank for $8,175 with two personal sureties and the deposit as collateral of 89 shares of stock in the Wheeler Dairy. The pledge contained in that note authorized the bank to sell, assign, and deliver the whole or any part of the collateral, and if the maker should become otherwise indebted to the bank to apply the net proceeds of the sale of the securities "either on this note or any other liability or engagements held by said bank as its president or cashier may elect."

It appears that the Wheeler Dairy was heavily indebted. On April 9, 1930, which was a little more than a month after the execution of the notes sued on, apparently through the interposition of the bank's cashier, the only stockholders in Wheeler's Dairy, namely, C. F. Wheeler, J. D. Wheeler, and Nannie E. Wheeler, entered into a contract with C. W. Wells and three others, whereby they sold to them all the stock, amounting to 194 shares, for the recited consideration of $20,000. The purpose and effect of the writing was to permit the sale of the assets of the corporation and the liquidation of its debts as therein described. S. G. Aldhizer, who was the cashier of the Citizens' National Bank, was designated as trustee. The bank was not a party to the instrument, nor did Aldhizer sign it, although the indebtedness of the corporation to the bank was listed. It appears that through Aldhizer's negotiations the corporation creditors shaved their claims to 85 per cent. and the assets were sold for $20,000, which was shown to be what they were reasonably worth. This yielded enough to pay the reduced claims and leave a balance of $100 for the stockholders. This sum was credited on the Wheeler note for $8,175. While Aldhizer testi-

fied that this was what the 89 shares pledged sold for, as we understand the evidence as a whole it was the balance available for distribution to the stockholders of Wheeler's Dairy, and was credited on the note without there having been strictly a sale of the stock by the bank; all parties seeming to concede the prior claims of the bank under the pledge. But the effect was the same, for it was all that the stock was worth, since the company's entire assets had been disposed of. So far as the personal indebtedness of C. F. Wheeler was concerned, the bank had no claim upon them. The assets of a corporation are subject to the satisfaction of its debts in preference to the payment of any obligation owing by a stockholder. 7 R. C. L. 198; Westerfield-Bonte Co. v. Burnett, 176 Ky. 188, 195 S. W. 477; Hawley Coal Co. v. Bruce, 252 Ky. 455, 67 S. W. (2d) 703. The only interest which the owner of stock has in the assets of a corporation is an equity after its debts have been paid. Hawley Coal Co. v. Bruce, supra.

Therefore, it is made to appear that the stock deposited to secure the $8,175 note and any other liability of Wheeler to the bank was disposed of for its worth, namely, $100. By the terms of the pledge the bank was authorized to sell or dispose of it and apply the proceeds to this particular debt. It salvaged the collateral and did so apply it. There was no surrender of it, and the case cannot be brought within the law relating to the release of sureties or accommodation indorsers as the result of such action. See Southern National Life Realty Corporation v. People's Bank of Bardstown, 178 Ky. 80, 198 S. W. 543; Rommel Brothers v. Clark, 255 Ky. 554, 74 S. W. (2d) 933. This was the sole defense, for there was no reliance upon any misrepresentation as to the value of the collateral. Hence there was no issue to submit to the jury and the court should have directed a verdict for the plaintiff, now the appellant.

Judgment reversed.